UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHARMEL PROPERTIES, INC., et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:18-CV-1746 PLC |
| | ) |
| RAYMOND T. DAVIS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court[1] on Defendant Raymond Davis's motion to dismiss Plaintiffs Sharmel Properties, Inc.'s ("Sharmel") and Melvin Milne's (collectively, "Plaintiffs") action for breach of contract and fraud pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 7] Plaintiffs oppose the motion. [ECF No. 14]

### I.  Factual and Procedural Background[2]

Milne, a resident of Missouri, was the principal of Sharmel, a Missouri corporation "engaged in the business of acquiring, operating, and selling multi-family and single family rental property." [ECF No. 12 at ¶¶ 3-4]  On October 1, 2003, Plaintiffs hired Davis, a management consultant residing in Michigan doing business as Inkjet Capital Management, to "assist them in arranging financing for the acquisition of new rental property…and then to assist in the re-financing of the properties already owned." [Id. at ¶ 12]  The parties entered a "Business Consulting Agreement" ("Consulting Agreement"), and Plaintiffs paid Davis a

---

[1] The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). [ECF No. 16]
[2] The factual material is derived from the Amended Petition and its attachments. [See ECF No. 12]

$10,000 "deposit and advance for the services to be furnished them[.]" [ECF No. 12 at ¶ 13]

Pursuant to the Consulting Agreement, Davis agreed to provide Plaintiffs the following services:

> **2.1 Advice and Counsel**
>
> Consultants will provide advice and counsel to Client to include all consulting services, including compiling information supplied by the client into a model to be submitted to the Institutional Banking unit to meet the criteria for certain equity and debt financing.
>
> **2.2 Introductions to the Investment Community**
>
> Consultants have substantial contacts among members of the investment community throughout the United States. Consultants shall introduce these contacts to Client so as to enable Client to establish relationships with investment banking firms, institutional banking firms, and investment professionals and to provide them with corporate information about Client on a regular and continuous basis. Consultants understand that this is in keeping with Client's business objectives. Client understands and agrees that Consultants shall only make introductions to potential investors and financial institutions.
>
> **2.2a  Scope of Consulting Services**
>
> Consulting services to be provided hereunder include recommending financing structures and making introductions to and managing relationships with, funding sources introduced to Client from the Consultant's proprietary business contacts, which consist of private and public investment funds, investment bankers, bond and tax credit brokers, private investors, bankers and insurance lenders. The services to be provided include any services ancillary to funding the Project and any funding package or structure approved by the Client and any modification to the Project or the structure of the funding required by the Client.

[ECF No. 5-1]  Milne signed the agreement on October 1, 2003 as "owner, President" of Sharmel. [Id.]  The signature line for Davis is blank. [Id.]

The amended petition states that Davis introduced Plaintiffs to Mark Harris, d/b/a New River Mortgage Group, and represented to them that Harris "and his business contacts would be able to accomplish the financing that Plaintiffs sought to accomplish." [ECF No. 12 at ¶¶ 14-

15]. When Harris failed to "arrange for, provide, or take any meaningful steps to provide" the financing needed to complete the acquisition of the new rental property or re-finance existing properties, Plaintiffs asked Davis to intervene. [Id. at ¶¶ 19-21] Plaintiffs also requested Davis "provide alternative sources of funding if [Harris] did not follow through on his contractual obligations." [Id. at ¶ 26] Davis "refused to take any action to assist Plaintiffs," the deal "fell through," and Plaintiffs lost the earnest money they had paid to the sellers, as well as other expenses incurred in preparing to buy the property.[3] [Id. at ¶¶22-23] In addition, Plaintiffs "were forced to sell certain of their rental properties" and "lost certain of their rental properties through foreclosure." [Id. at ¶¶ 27-28]

On April 23, 2014, Plaintiff filed a petition against Harris in the Circuit Court of St. Louis County alleging breach of contract and fraud. [ECF No. 5] With the petition, Plaintiffs filed a copy of the Consulting Agreement and a "Special Sale Contract," along with its amendments, for the purchase of Bridleton Wood Apartments.[4] [ECF Nos. 5-1, 5-2, 5-3] The "Third Amendment to Special Sale Contract" reflected a closing date of January 2, 2004. [ECF No. 5-3]

The trial court granted Plaintiffs leave to amend the petition and add Davis as a defendant in May 2016. See 14SL-CC-01322, 14SL-CC-01322-01. Davis was served with the amended

---

[3] In the original and amended petitions, Plaintiffs alleged that they "lost the $25,000.00 earnest money paid to the sellers…." [ECF Nos. 5 at ¶ 15; 12 at ¶ 23] However, Plaintiffs attached to the petitions a copy of a check, made out to Capital Title, dated September 19, 2003 with the memo line "earnest $," which is for the amount of $5,000. [ECF Nos. 5-3 at 5; 12 at 48]

[4] Plaintiffs also attached as an exhibit to the petition a copy of their loan application and related documentation. [ECF No. 5-2] Because it was not relevant to the issues before the Court, the Court does not consider the loan application in ruling on this motion to dismiss. The Court does, however, consider the Consulting Agreement and Special Sale Contract, because they were contemplated by and expressly incorporated in the amended petition and the parties do not challenge their authenticity. See Dittmer Props., LP v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

petition on September 28, 2018. See 14SL-CC-01322, 14SL-CC-01322-01. In the amended petition, Plaintiffs alleged claims of breach of contract and fraud against Davis and Harris. Plaintiffs sought compensatory relief in the amount of $1,158,756.20, "together with costs of court herein expended," and punitive damages for fraud. [ECF No. 12]

Davis removed the case to federal court on the basis of diversity jurisdiction on October 12, 2018. [ECF No. 1] Because Plaintiffs failed to effect service upon Harris, the Court dismissed him from the case without prejudice. [ECF No. 15]

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Aschroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2006)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When considering a motion to dismiss for failure to state a claim, a court is generally limited to review of the complaint, exhibits attached to the complaint, and matters necessarily embraced by the complaint. See, e.g., Dittmer Props., LP v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

"When an affirmative defense such as the statute of limitations is asserted in support of a motion to dismiss, the petition may not be dismissed unless it clearly establishes on its face and without exception that it is barred." Hemar Ins. Corp. of Am. v. Ryerson, 108 S.W.3d 90, 92 (Mo.App. 2003) (citing Sheehan v. Sheehan, 901 S.W.2d 57, 59 (Mo. banc 1995)). See also Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011) (quotation omitted) ("As a

4

general rule, 'the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense.'").

### III. Discussion

Davis moves to dismiss Plaintiffs' action for breach of contract and fraud on the grounds that the amended petition, on its face, establishes: (1) the claims are barred by the statute of limitations; (2) the claims are barred by the statute of frauds; (3) Plaintiff Milne is not a real party in interest; and (4) service of summons and amended petition on Davis was improper because the amended petition was never filed in state court. [ECF No. 7] In response, Plaintiffs dispute Davis's claim that they did not file the amended petition in state court. [ECF No. 14] Plaintiffs do not address Davis's arguments relating to the statute of limitations, statute of frauds, or real party in interest.

#### A. Statute of Limitations

Davis urges the Court to dismiss Plaintiffs' case because the amended petition establishes that Plaintiffs' claims are barred by the relevant statutes of limitations. Davis asserts that, because Plaintiffs' claims are based on activities that allegedly occurred in 2003 and 2004, and Plaintiffs did not file this action until April 2014, Plaintiffs claims are barred by either Missouri's five-year statute of limitations or Michigan's six-year statute of limitations.[5]

As an initial matter, the Court addresses the question of whether to apply the law of Missouri or Michigan. "A federal court exercising diversity jurisdiction is required to apply the law of the forum when ruling on statutes of limitations." Pinnacle Pizza Co., Inc. v. Little Caesar Entrs., Inc., 598 F.3d 970, 975 (8th Cir. 2010) (quoting Nettles v. Am. Tel. & Tel. Co., 55 F.3d

---

[5] The Consulting Agreement contained a choice-of-law provision stating that the Agreement "shall be governed by and construed and enforced in accordance with the laws of the state of Michigan[.]" [ECF No. 12 at 18]

5

1358, 1362 (8th Cir. 1995)). "Missouri, the forum, considers statutes of limitations issues procedural, and, therefore, governed by Missouri law." Nettles, 55 F.3d at 1362 (quoting Renfro v. Eli Lilly & Co., 686 F.2d 642, 646 (8th Cir. 1982)). See also Witherspoon v. Bayer HealthCare Pharm. Inc., No. 4:13-CV-1912-ERW, 2013 WL 6069009, at *3 (E.D. Mo. Nov. 18, 2013). Therefore, the Court applies the Missouri statute of limitations in resolving this case. See Pinnacle Pizza, 598 F.3d at 975.

The five-year statute of limitations set forth in Mo. Rev. Stat. § 516.120 applies to actions for breach of contract and fraud. Mo. Rev. Stat. §§ 516.120(1), (5). Accordingly, Plaintiffs' claims are actionable only if they filed their lawsuit within five years from the date that their causes of action accrued. Aguilar v. Thompson Coburn LLP, 540 S.W.3d 910, 914 (Mo.App. 2018).

Under Missouri law, a cause of action does not accrue "when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment[.]" Mo. Rev. Stat. § 516.100. Damages are capable of ascertainment, and the statute of limitations begins to run, when the evidence places "a reasonably prudent person on notice of a potentially actionable injury." Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. banc 2006) (quoting Bus. Men's Assurance Co. of Am. v. Graham, 984 S.W.2d 501, 507 (Mo. banc 1999)). "When the fact of damage is capable of ascertainment, the statute of limitations is put in motion, even if the amount of damage is unascertained." Washington v. Countrywide Home Loans, Inc., 747 F.3d 955, 959 (8th Cir. 2014), cert. denied, 135 S. Ct. 307 (2014) (citing Davis v. Laclede Gas Co., 603 S.W.2d 554, 556 (Mo. banc 1980)).

1. **Breach of contract**

"In an action on a contract, a cause of action accrues upon a defendant's failure to perform at the time and in the manner contracted, and a statute of limitations begins to run when a suit may be maintained." Hemar Ins., 108 S.W.3d at 94-95 (citing Nuspl v. Mo. Med. Ins. Co., 842 S.W.2d 920, 922 (Mo.App. 1992)). In other words, "in a breach-of-contract suit, the cause of action 'accrues upon a defendant's failure to do the thing at the time and in manner contracted.'" Great Plains Trust Co. v. Union Pac. R. Co., 492 F.3d 986, 992 (8th Cir. 2007) (quoting Davis, 603 S.W.2d at 555).

Here, the alleged breach was Davis's failure to "act when advised of Harris's failure to follow through on funding the new acquisitions" and "refus[al] to provide an alternative funding source when advised by Plaintiffs that Harris was not funding the purchase of" the Bridleton Woods Apartments. [ECF No. 12 at ¶¶ 30-31] Viewing the facts in the light most favorable to Plaintiffs, and assuming without deciding that Davis's alleged inaction constituted a breach of the Consulting Agreement, Plaintiffs' damages were capable of ascertainment on January 2, 2004, the closing date for the Bridleton Woods Apartments sale. Plaintiffs were necessarily aware that Davis "failed to provide any meaningful service," and they could ascertain they were damaged, when the planned purchase of the Bridleton Woods Apartments fell through. While Plaintiffs might not have known the extent of their losses, accrual does not depend on knowing the full extent of the damages caused by the breach. See Smock v. Associated Elec. Coop., Inc., 567 S.W.3d 211, 218 (Mo.App. 2018).

Plaintiffs' breach of contract claim accrued in January 2004, and the limitation period expired five years thereafter. Accordingly, Plaintiff's breach of contract claim is time-barred.

### 2. Fraud

"A suit alleging fraud is treated differently [than other causes of action] for statute of

limitations purposes[.]" Allen v. Martin, Leigh & Laws, PC, No. 6:18-3100-CV-RK, 2019 WL 470915, at *4 (W.D. Mo. Feb. 6, 2019). Section 516.120(5) provides that, in "[a]n action for relief on the ground of fraud, the cause of action in such case [is] deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." Mo. Rev. Stat. § 516.120(5). "Consequently, the latest a fraud claim can accrue and the statute of limitations begin to run is 10 years after it is committed, regardless of whether the fraud actually is discovered." Ellison v. Fry, 437 S.W.3d 762, 769 (Mo. banc 2014). In other words, "fraud claims must be brought within five years from when the cause of action accrues, which is either when the fraud is discovered or at the end of [ten] years after the fraud takes place, whichever occurs first." Dean v. Noble, 477 S.W.3d 197, 204 (Mo.App. 2015) (quoting Ellison, 437 S.W.3d at 769). "A plaintiff has a duty to make inquiry to discover facts surrounding the fraud and is deemed to have knowledge of the fraud when he possesses the *means* of discovery." Id. (emphasis in original) (citing Schwartz v. Lawson, 797 S.W.2d 828, 832 (Mo.App. 1990)).

Plaintiffs do not claim, and the amended petition does not suggest, any delay in discovering the alleged fraud or fraudulent concealment on the part of Davis. Taking as true the facts alleged in the amended petition, the fraud occurred when Davis intentionally lead Plaintiffs to believe that "Davis was familiar with and had vetted [Harris] as a qualified source of business funding[.]"[6] [ECF No. 12 at ¶ 37] Davis introduced Plaintiffs to Harris, and committed the alleged fraud, sometime between October 3, 2003 and January 2, 2004. Based on the allegations in the amended petition, Plaintiffs knew or should have known that neither Harris nor Davis

---

[6] Plaintiffs also alleged, in their claim for breach of contract, that Davis "represented to Plaintiffs that Harris and his business contacts would be able to accomplish the financing that Plaintiffs sought to accomplish." [ECF No. 12 at ¶ 15]

8

would assist them in obtaining the financing by January 2, 2004, at the latest, when the "deal [to purchase the new rental property] fell through." [ECF No. 12 at ¶ 23]  Accordingly, Plaintiff's fraud claim accrued in January 2004, more than five years before Plaintiffs filed the lawsuit, and is therefore barred by the statute of limitations.

### IV. Conclusion

After careful consideration, the Court finds Plaintiffs' amended petition establishes that the claims therein are barred by the statute of limitations.[7]  See Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) ("A court may dismiss a claim under Rule 12(b)(6) as barred by the statute of limitations if the complaint itself establishes that the claim is time barred.").  Accordingly,

**IT IS HEREBY ORDERED** that Davis's motion to dismiss [ECF No. 7] is **GRANTED** and this case is **DISMISSED with prejudice.**

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of June, 2019

---

[7] Because the amended complaint establishes on its face that the relevant statutes of limitations barred Plaintiffs' claims, the Court does not address Davis's other arguments in favor of dismissal.